UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

JANE DOE, Plaintiff, pro se

v.

MISSISSIPPI BEND AREA EDUCATION AGENCY,
Glenn Pelecky, Agency Director, in his official capacity at the time of the actions
Edward Gronlund, HR Director, in his official capacity
Julie Schendel, Director of Special Education, in her official capacity at the time of the actions
Mary Cashman, Sector Coordinator, in her official capacity

Defendants.

COMPLAINT

December 24, 2014

*Summary statement*

This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices and retaliation against Plaintiff, including Defendant's unlawful discrimination because of the Plaintiff's legally protected actions advocating for the rights afforded to students with disabilities, including for her own son, while an employee of the MBAEA. A parent's (or any other person's) right to advocate for a disabled child is a protected activity under law, and retaliation for such activity is prohibited by a variety of state and federal statutes, including, but not limited to, the Individuals with Disabilities Education Act (IDEA), the Americans with Disabilities ACT (ADA)

and Section 504 of the Rehabilitation Act.

The Plaintiff is a psychologist who was employed by the Mississippi Bend Area Education Agency (MBAEA) for fifteen years, from August 1998 – July 2013. The Plaintiff previously filed in a timely manner with the Equal Employment Opportunity Commission (EEOC) in September 2013. The related EEOC charge number is: 846-2013-51707. On or about October 9, 2014, the Plaintiff received a letter from the EEOC providing the plaintiff with the right to take civil action against the MBAEA.

*Jurisdiction*

To the best of my knowledge, this Court has jurisdiction over this action, as this action involves federal questions regarding the deprivation of the Plaintiff's civil rights.

*Background Information*

The Plaintiff states under penalty of perjury that the following is a true and accurate account of the events that occurred:

In May 2010—just prior to my son's enrollment in an LEA within the domain of the MBAEA--Mary Cashman, Sector Coordinator, conducted a comprehensive formal evaluation of my work performance. This review was based on supervisors' observations, feedback from principals in school districts served, an extensive portfolio compiled by the staff member, including examples of special education evaluations and other work products, professional development artifacts, and an interview with the supervisor. Cashman's evaluation indicated that I met all of the competencies for my position as a school psychologist with the MBAEA.

Then, shortly after this positive comprehensive evaluation--Cashman began to find fault with my work performance. Specifically, this occurred after the following:

In October 2010, I met with my son's principal and associate principal at his LEA, regarding his educational program. Following that meeting, the associate principal communicated to Julie Schendel, Director of Special Education, her frustration that she and the high school principal had spent much time with me, and still had not reached an agreement on issues related to my son's special educational program. From that point on, Cashman and Schendel began to make additional, time-consuming requests for documentation, above and beyond what was required of others. These time-consuming additions to my workload made it much more challenging to meet all of my professional responsibilities within the expected deadlines. My assignment the following year was increased to serving six school schools, an administrative decision which felt punitive, and seemed designed to set me up for failure, albeit possibly attributable to staffing concerns. However, in combination with the additional tasks, assigned for no data-based reason, these actions did appear to be punitive. For example, I was required to review every Individual Education Plan in a district for compliance, when my peers only had to review a small sample.

In March of 2011, in a private conversation with then colleague Michele Martin, I expressed my frustration at the amount of additional assignments I was required to do, and wondered out loud if this was Mary [Cashman]'s response to an issue in the Calamus-Wheatland school district. Michele's spontaneous response was—virtually verbatim—"Oh, no, it wasn't the thing up in Cal-Wheat, it

was the contact from [naming my son's school]. That went to Julie [Schendel], so Mary [Cashman] *had* to do something about it." The significance of this is that *my only role at my son's school was that of a parent.* So Michele was letting me know that Mary, whom she liked, wasn't doing this of her own accord, but was acting under pressure from Schendel. (She would later--after becoming part of the supervisory staff at AEA9--deny having made that spontaneous statement.)

Also in March of 2011, I had a phone conversation with Thomas Mayes, Esq., attorney for the Iowa Department of Education. I expressed my concern about the retaliatory harassment from the AEA. Mayes offered to call Schendel on my behalf, to remind her that such harassment was not acceptable. I declined his offer, fearful that it would lead to greater retaliation.

For a period of approximately three years, from October 2010 until my resignation in July 2013, supervisory staff of the Mississippi Bend Area Education Agency (MBAEA) engaged in an ongoing and intensifying pattern of harassment, interference and retaliation against me in response to my advocacy for my son. After I filed a request for mediation, in September 2011, the harassment intensified. When I ultimately had to file for Due Process, naming the MBAEA as well as the district as parties to the denial of my son's right to an appropriate education, the harassment became unrelenting. My work was increasingly scrutinized, false statements were made about me, and I was threatened with the loss of my job.

Cashman and Schendel each engaged in serious violations their professional ethics and standards in relation to my son's education, including but not limited to the following: Cashman gave false testimony under oath at the January 2013 Due

Process hearing, and Schendel gave statements at Due Process which she knew to be misleading.  Cashman, along with other parties within the MBAEA and/or the district, colluded to misrepresent key facts of my son's case.

Cashman and Schendel each have or had a professional responsibility to safeguard the rights of students with disabilities.  They did not honor that responsibility in relation to my son.  Instead, they were participants in and/or facilitators of violation of the Individuals with Disabilities Education Act (IDEA), as well as Section 504 of the Rehabilitation Act.  In an apparent attempt to conceal their wrong-doing, they engaged in an escalating pattern of harassment against me which closely corresponded to my advocacy for my son in time and intensity.

HR Director Edward Gronlund and then CEO Glenn Pelecky were made aware of my concerns about the retaliatory behaviors of Cashman and Schendel, and failed to take appropriate action to investigate those concerns.  In addition, all four of these MBAEA supervisory staff were aware, through the Request for Mediation filed on behalf of my son in September 2011, of my assertion that MBAEA and LEA staff had illegally altered my son's IEP outside of an IEP meeting, yet they did nothing to investigate this serious violation.  The retaliation I experienced created a painfully hostile work environment, and impeded my capacity to advocate for my son without fear of further retaliation.

Ironically, during the time that the MBAEA supervisory staff were most intensely harassing me—after I filed a request for Due Process—they began to use a strategy of blaming the victim, and accusing me of being 'threatening" toward them.  However, they used the term "threatening" to substitute for disagreeing or expressing a different point of view, and used this false accusation to harass and

discredit me. Cashman made this inflammatory statement in a meeting after I stated that I believed that her scrutiny and false claims about my work performance were a response to my advocacy for my son, and that I had been told by an attorney that that kind of retaliation was prohibited under Iowa law. In response, Ms. Cashman accused me of being "threatening" and ended the meeting.

*Causes of action*

The MBAEA's retaliation, interference and harassment included but was not limited to the following:

1. False, misleading and defamatory statements made about me which I believe were made for purposes of retaliatory harassment. These statements were made verbally and in writing, although what was put into writing appeared carefully worded to avoid--in most cases--outright falsehood. The relentless nature of this harassment created a hostile work environment which had a negative effect on my health.

2. Imposition of additional tasks, unrelated to serving students or LEA staff in schools I served. These tasks were required of me but not required of other MBAEA staff, without valid justification. This made it harder for me to do my job for students and staff in the schools I served in a timely fashion. I was faced with the threat of adverse action if I failed to meet all deadlines.

3. Cashman's hostile response to my need for sick leave for 1-2 days for cataract surgery, requiring me to make up the days in that school building, without any guidance as to how I could make up time in one school without taking time from another school, when all Iowa schools observe the same basic Monday – Friday schedule.

4. Threatening adverse action if I failed to complete the newly assigned, yet additional tasks, required of me but not others, right after I had surgery.

5. Violations of confidentiality under FERPA and/or HIPAA and/or collusion with the LEA in such violations. Inappropriate and derogatory comments about me to LEA staff.

6. Harassing and inappropriate directives, such as the following: Cashman interrupted my work with a special needs student a school in Davenport, and ordered me to drive to the (distant) Calamus-Wheatland school district, *because a special education teacher wanted the address for West Music.* Cashman denied my request to handle this perceived need by phone or

email, disregarding my concern about meeting the needs at my assigned school for the morning. Cashman's order delayed my work with the student at a key time, which understandably had a negative impact on perceptions of my work by the principal of that school.

7. Cashman's use of intimidation by her attendance at my son's May 16, 2011 IEP meeting without notice. Parents are entitled to a meeting notice stating who will be present at their child's IEP meeting. I was not provided any such notice, and as her employee, did not feel I could voice my extreme discomfort with her presence or freely advocate for my son's educational needs. Ms. Cashman was not a facilitator in the meeting, but was essentially a silent observer, a role which appeared to serve no other purpose than intimidation.

8. Cashman violated the requirement that parents must be invited to participate in all IEP meetings for their child when she participated in an IEP meeting on May 12, 2011, to which I was not invited and which resulted in substantive changes to my son's IEP. Her action gave district and AEA staff the message that they could act in disregard of the law in regard to my son and my rights as a parent. This disregard of my son's rights and the subsequent harm to him created an extraordinarily painful situation for me as a parent: watching my bright, kind and hard-working son decline, being punished and rendered powerless to effectively advocate for his needs, and being harassed and threatened with termination at work. This created an untenable level of stress for me, which had a negative impact on my physical and emotional health. Despite her knowledge of the negative health impact, Cashman intensified the harassment.

9. Cashman had direct knowledge as a participant and Schendel, Gronlund and Pelecky had later knowledge of my concern that district and AEA staff had illegally altered my son's IEP outside of an IEP meeting, and did nothing to investigate or address that concern. This underscored the message that LEA and AEA staff could act with impunity in relation to my son and me.

10. Selective and inappropriate use of evaluation procedures to punish me for my advocacy as a parent. For instance, I was requiring me to attend what I experienced as a very hostile meeting, threatening my job, in late July 2012, while I was not on contract, and without pay. At this meeting, I was threatened with an assistance plan, even though I had met with my supervisor at the end of the school year, and no mention was made of an assistance plan. Since I was not on contract between the two meetings (or not more than a few days), and no new information transpired, there could have been no actual basis for the decision to place me on an assistance plan, or to make such a threat, in July.

11. Intentional solicitation of negative input from building staff, in contrast to standard MBAEA practice, in order to harass and discredit me. I am not suggesting that this has not been done to anyone else, but rather that it has

been done selectively, and for retaliatory purposes, rather than routinely as part of the evaluation process of all employees. Former MBAEA employees who settled out-of-court with the Agency are, to my knowledge, able to testify if subpoenaed.

12. In this ongoing pattern of retaliatory harassment, the final action by the MBAEA was to deny my request for a leave of absence, a request that to my knowledge has never been denied to any other employee. As a result of the district and MBAEA's denial of my son's right to an education appropriate to his very unique disabilities, my son suffered very significant harm. As the harm to my son increased, and I need to take additional steps to exercise my parental rights, the MBAEA subjected me to pervasive and retaliatory harassment in my professional capacity as a school psychologist. Finally, my son suffered so much harm that he needed a more intensive program designed to address his increased needs. I requested a leave of absence in order to provide care and supervision for my son while he attends a non-residential, out-of-state program for students with specific learning disabilities. The MBAEA, whose purported mission is to support the needs of students with disabilities, denied me that unpaid leave of absence.

I will attach the following related documents:

A. Formal evaluation of my work performance by Mary Cashman in May 2010 attesting to my competency in all areas of evaluation for the position of school psychologist.

B. Letter of reference from Calamus-Wheatland Elementary School principal demonstrating appreciation for my professional contributions.

C. Formal evaluation form, dated January 2012, solicited by MBAEA from Harrison Elementary School principal, showing a positive review and documenting my meeting of all professional expectations.

Defendant's conduct demonstrated a knowing and willful disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harm to her professional reputation, and severe mental anguish and emotional distress.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of Iowa;

   B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct against any person;

   C. An order directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory and harassing treatment and otherwise unlawful conduct.

   D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

   E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional reputation and loss of career fulfillment;

   F. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

   G. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

   H. An award of punitive damages;

   I. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees, if an attorney's legal services are used, to the fullest extent permitted by law; and

   J. Such other and further relief as the Court may deem just and proper.

If I have the right to request that the court appoint an attorney to represent me, I would like to make that request now.

Respectfully submitted,

(Please redact name, signature and email address.)

Mailing address:
116 East Moreland Avenue
Apt. B5
Hatboro, PA 19040
E: _____
C: 309-235-4913

I hereby certify that copies sent via US Mail on December 24, 2014 to the following:

Agency Director
Mississippi Bend Area Education Agency
729 – 21st Street
Bettendorf, IA 52722

Lane & Waterman, LLP
220 North Main Street, Suite 600
Davenport, IA 52801

Mary Cashman
Mississippi Bend Area Education Agency
729 – 21st Street
Bettendorf, IA 52722

Edward Gronlund
Mississippi Bend Area Education Agency
729 – 21st Street
Bettendorf, IA 52722

Glenn Pelecky
c/o Mississippi Bend Area Education Agency
729 – 21st Street
Bettendorf, IA 52722

Julie Schendel
c/o Mississippi Bend Area Education Agency
729 – 21st Street
Bettendorf, IA 52722

L. Pratt
116 East Moreland Ave.
Apt. B5
Hatboro, PA 19040

Clerk of the Court
US District Court
Southern District of Iowa
134 East 4th St.
Davenport, Iowa
52801

